## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

SHONNA M. WASHINGTON,          :
                               :
          Plaintiff,           :
                               :          CIVIL ACTION FILE NO.
v.                             :          1:07-CV-1908-AJB
                               :
MICHAEL J. ASTRUE,             :
*Commissioner of Social*       :
*Security Administration*,     :
                               :
          Defendant.           :

## ORDER AND MEMORANDUM OPINION[1]

Plaintiff Shonna Washington ("Plaintiff"), proceeding *pro se* (without an attorney), brought this action pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") Benefits  under the Social Security Act ("the

---

[1]        The parties consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73.  [*See* Doc. 10; Dkt. Entry dated 2/6/2008].  Therefore, this Order constitutes a final Order of the Court.

Act").[2]  For the reasons stated below, the Court **REVERSES AND REMANDS** for

further proceedings consistent with this Order and Opinion.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for DIB on June 4, 2003, alleging disability

commencing on June 4, 2003.  [Record (hereinafter "R") 47-49].  She also filed an

application for SSI on May 26, 2004, alleging the same disability onset date.  [R53-55].

Plaintiff's SSI and DIB applications were denied initially and on reconsideration.

[*See* R18-22, 30-31].  Plaintiff then requested a hearing before an Administrative Law

Judge ("ALJ").  [*See* R17A, 32].  An evidentiary hearing was held on June 14, 2006.

[R325-39].  The ALJ issued a decision on January 3, 2007, denying Plaintiff's claims

_____

[2]      Title II of the Social Security Act provides for federal disability insurance benefits.  42 U.S.C. § 401 *et seq*.  Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*., provides for supplemental security income benefits for the disabled.  Title XVI claims are not tied to the attainment of a particular period of insurance disability.  *Baxter v. Schweiker*, 538 F.Supp. 343, 350 (N.D. Ga. 1982).  The relevant law and regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for SSI.  *Davis v. Heckler*, 759 F.2d 432, 435 n.1 (5th Cir. 1985).  Under 42 U.S.C. § 1383(c)(3), the judicial provisions of 42 U.S.C. § 405(g) are fully applicable to claims for SSI.  In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "period of disability," or to recover SSI.  However, different statutes and regulations apply to each type of claim.  Therefore, to the extent that the Court cites to SSI cases, statutes, or regulations, they are equally applicable to Plaintiff's DIB claims.

2

AO 72A
(Rev.8/8
2)

on the grounds that she had not been under a "disability" at any time through the date of the decision. [R8-17]. Plaintiff sought review by the Appeals Council and on May 25, 2007, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. [R4-6].

Proceeding *pro se*, Plaintiff then filed an action in this Court on July 23, 2007, seeking review of the Commissioner's decision. *Shonna M. Washington v. Commissioner of Social Security*, Civil Action File No. 1:07-cv-1908. [Doc. 2]. The answer and transcript were filed on January 24, 2008. [Docs. 7-8]. A supplement to the transcript was filed on April 30, 2008. [Doc. 16]. The matter is now before the Court upon the administrative record, the parties' pleadings, and the parties' briefs, and is accordingly ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.     STATEMENT OF FACTS

### A.     *Plaintiff's Representations in Social Security Administration Forms*

In a May 15, 2003, disability report, Plaintiff complained that the following conditions limited her ability to work: (1) valvular heart disease; (2) hypertension; and (3) iron deficiency. These conditions caused constant dizziness, chest pain, fatigue, and swelling feet. [R57].

3

In a June 19, 2003, pain report, Plaintiff indicated that she had aching and crushing pain in her chest two times per hour and constant pain in her upper back. She indicated that her chest pain caused her to hold her breath and forced her to take small breaths. [R79]. Plaintiff also had pain, which lasted all day long, in her right knee, lower legs and tenderness on the bottom of her feet. [R81]. She also had pain in her upper abdomen two times per day after eating. [R83]. She would get dizzy, light headed, and fatigued. [R85].

In a May 20, 2004, disability report appeal, Plaintiff reported that since her last report, she had the following new problems: palpitations, fatigue, constant break out of hives all over her body, and joint pain. [R92]. Plaintiff's problems from shortness of breath, chronic joint pain, hand swelling, and hives affected her ability to walk. [R96].

B.    *Medical Record*

Plaintiff went to Med-Com Health Services on February 19, 2002, complaining of palpitations, chest pain, and dizziness. [R117, 119]. Her blood pressure was 140/90, and a physical exam revealed even and unlabored respiration. [R117]. Her judgment and insight were within normal limits and she was alert and oriented. Plaintiff was given the following assessment: palpitations, anemia, and fatigue. [R118]. Notes from

4

a doctor's examination are largely illegible, but appear to indicate that Plaintiff needed a cardio consultation. [R119]. On February 22, 2002, Plaintiff had an echocardiogram (an exam that uses ultrasound to create a moving picture of the heart),[3] which revealed: (1) normal left ventricular dimensions and systolic function; (2) trace tricuspid valve regurgitation (the backflow of blood across the tricuspid valve separating the right ventricle from the right atrium); and (3) no pericardial effusion (increased fluid in the pericardial sac that can cause circulatory problems from compression of the heart). [R129, 260].

Plaintiff returned to Med-Com Health Services on March 20, 2002, complaining of heart palpitations. She also complained of headaches and dizziness. Plaintiff's respiration was even and unlabored. [R113]. Her judgment and insight were within normal limits, and she was alert and oriented. Plaintiff was given the following assessment: palpitations, anemia, and fatigue. [R114]. Plaintiff again went to Med-Com Health Services on April 30, 2002, where she complained of headaches and nausea. Her blood pressure was 118/72, and her breathing was even and unlabored.

---

[3]     Except where otherwise noted, the Court's definitions of medical terms and phrases are from the Medline Plus Medical Dictionary and the Medline Plus Encyclopedia. *See* Medline Plus Dictionary, http://www.nlm.nih.gov/medlineplus/mplusdictionary.html; Medline Plus Encyclopedia, http://www.nlm.nih.gov/medlineplus/encyclopedia.html.

5

[R111].  Plaintiff was alert and oriented.  [R113].  She had some tenderness of the central spine with some spasms.  [R112].  The assessment indicated that Plaintiff had headaches and anemia.  [*Id.*].

Plaintiff was seen at Med-Com Health Services on May 9, 2002, where she complained of chronic headaches.  Her blood pressure was 134/80.  Her respiration was even and unlabored.  Plaintiff had a normal MRI on May 6.  She also had tight braids, but her head was not throbbing.  [R109].  Plaintiff was assessed with headaches and told to diet, exercise, and take Alleve.  [R110].

On May 6, 2002, Plaintiff had an MRI of the brain and a MRA (imaging of blood vessels) of the brain because of a history of chronic headaches.  Both exams came back normal.  [R187].

Plaintiff was seen on May 16, 2002, for a medical consultation by an unidentified doctor.  The medical note indicated that Plaintiff was seen for evaluation of her palpitations, heart murmur, and valvular insufficiency.  The note also indicated that Plaintiff had been seen for the past few months with a combination of palpitation, chest heaviness, occasional dizziness, and shortness of breath.  Plaintiff's tests indicated some mild arrhythmias and a leaky valve.  A physical examination revealed that: Plaintiff's blood pressure was 150/90; she had clear lungs; and she had a grade I/VI

6

apical systolic murmur.[4]   [R104].   An EKG showed nonspecific ST alterations. Plaintiff was assessed with the following: atypical chest pain, dizziness and dyspnea (difficult or labored respiration); hypertension, possible mitral insufficiency; migraine headaches; and anemia.  [R104, 263].

Plaintiff went to Med-Com Health Services on August 27, 2002, where she complained of palpitations, chest pain, nausea, and abdominal pain.  Her blood pressure was 154/92.  Her respiration was even and unlabored.  [R107].  Her gait was smooth and coordinated, and she was alert and oriented with normal insight and judgment. Plaintiff was assessed with hypertension, palpitations, headaches, nausea, and anemia. [R108].

On February 3, 2003, Plaintiff went to the Southern Jersey Family Medical Centers, Inc., ("SJFMC"), because she was out of her hypertension medications.  The notes also indicated that Plaintiff complained of occasional shortness of breath on exertion, but she denied palpitations or chest pain.  The doctor gave the following

---

[4]   An apical systolic murmur is a murmur previously considered benign, but is viewed as having a possible relationship to pericardial disease.  It often represents mitral insufficiency (an inability of the mitral valve to close perfectly permitting blood to flow back into the atrium and leading to varying degrees of heart failure). *See* MediLexicon, http://www.medilexicon.com/medicaldictionary.php?t=56532 (last visited May 7, 2008).

7

impression: (1) hypertension; (2) anemia; and (3) shortness of breath probably due to anemia or valve disease.  [R291].

Plaintiff went to the SJFMC on February 20, 2003, where she was assessed with hypertension and a history of valvular heart disease.  [R301].  Plaintiff returned to the SJFMC on February 28 where she was diagnosed with stable hypertension, valvular heart disease, and iron deficiency anemia.  [R300].  Plaintiff had a treadmill stress echocardiogram on March 8, 2003.  The results were normal.  [R181].

Plaintiff went to the SJFMC on March 12, 2003, where she was diagnosed with hypertension, valvular heart disease, and anemia. [R299].  Two days later, Plaintiff had an x-ray of her pelvis.  This x-ray revealed a small cyst-like fluid collection.  The report indicated that it might indicate a uterine cyst, a remote hemorrhage, or a cystic degeneration of a fibroid.  Also, the report indicated that a very early pregnancy may be present.  [R175].  Plaintiff then went to the SJFMC on March 26, 2003, where she was diagnosed with controlled hypertension, anemia, and valvular heart disease. [R298].

Plaintiff was seen on April 25, 2003, at the SJFMC.  She complained of swelling in the legs.  Plaintiff did not exhibit shortness of breath or palpitation.  The medical notes indicated that Plaintiff had a history of hypertension and anemia.  [R307].

8

On May 15, 2003, Plaintiff went to the SJFMC where she was diagnosed with hypertension, anemia, and valvular heart disease. [R296]. On May 16, 2003, Plaintiff had x-rays of her right lower leg and chest. Plaintiff complained of leg pain three inches below her patella, but the x-ray of her right lower leg was negative. Also, x-rays of Plaintiff's chest were normal, but it was noted that there was a suggestion of rotatory scoliosis of the lumbar spine. [R152].

On May 18, 2003, Plaintiff was admitted to the Atlantic City Medical Center because of abdominal pain, pain of the left shoulder, and shortness of breath. [R133, 139]. She was discharged on May 24, 2003. [R133]. An ultra sound of the upper abdomen on May 18, 2003, was normal. [R168]. A CAT scan of the abdomen showed a large amount of ascites (abnormal accumulation of serous fluid in the spaces between tissues and organs in the cavity of the abdomen) within the abdomen and pelvis. [R139]. Plaintiff was assessed with a hemoperitoneum (blood in the peritoneal (relating to membrane of abdomen wall) cavity), which was possibly related to a ruptured hemorrhagic ovarian cyst. [R140]. Plaintiff also was assessed with anemia. [R140]. Plaintiff's final discharge diagnoses were: abdominal pain; positive CLOtest; moderate gastritis (inflammation of membrane of the stomach); hemoperitoneum;

9

ascites; acute anemia; chest pain[5]; leukocytosis (increase in the number of white blood cells in the blood); history of iron-deficiency anemia; and hypertension.  Also, the note indicated that Plaintiff experienced left-sided pressure-like chest pain and epigastric abdominal pain, nausea and vomiting, mild dyspnea on exertion, shortness of breath, palpitations, and diaphoresis (profuse perspiration).  Plaintiff denied headache.  [R133].

Plaintiff was seen on May 20, 2003, for a CT scan of the abdomen and pelvis. The medical note indicated that Plaintiff had a history of pain.  The CT impression of the abdomen revealed a decrease in the amount of ascites.  The CT examination of the pelvis revealed a small amount of pelvic ascites.  [R246].

On June 5, 2003, Plaintiff was seen at the SJFMC after being discharged from the hospital following an episode of dizziness and "extreme [illegible]."  She was assessed with hypertension, hypoglycemia, and anemia.  [R308].

Plaintiff had a MRI and MRA of the abdomen.  The MRI revealed a hepactic (relating to the liver) cyst.  The MRA revealed that the kidneys are "supplied by solitary renal arteries."  [R235].  Plaintiff had a renal arteriogram on July 29, 2003, which

---

[5]      Acute coronary syndrome was ruled out as a cause for the chest pain. [R135].

AO 72A
(Rev.8/8
2)

demonstrated no evidence of renal artery stenosis (narrowing of the kidney arteries). [R230].

Plaintiff went to the SJFMC on June 24, 2003, where she was assessed with stable hypertension and increased insulin level.  [R303].  Plaintiff was seen at the SJFMC on July 20, 2003, where she was diagnosed with hypertension and an anaphylactic reaction.  She was given an epipen and told to continue with her current medications.  [R309].

Plaintiff was seen at accredited dermatology on August 20, 2003 where she was examined to determine whether she had urticaria (hives).  [R286].

On August 27, 2003, Plaintiff went to the SJFMC where she was diagnosed with stable hypertension and an allergic reaction.  [R304].

On September 17, 2003, Dr. Peter Kuponiyi performed a consultative exam for the New Jersey Department of Labor. [R194].  Dr. Kuponiyi listed Plaintiff's problems as follows: hypertension for two years; anemia since 1996; problems with hives; and gastritis. [R194-95].  Dr. Kuponiyi indicated that Plaintiff's systems were negative for arthritis, angina, heart attack, and asthma.  [R195].

Dr. Kuponiyi's physical examination of the Plaintiff indicated that she was alert, awake, and oriented.  Plaintiff's vision with glasses was 20/50 on the right, and 20/20

11

on the left.  Her blood pressure was 150/100.  Plaintiff's chest was clear, and there were no murmurs, rubs, or gallops for her cardiovascular system.  Plaintiff's skin did not have any rash on an exposed part of her body.  Plaintiff reported that when she gets hives, she develops joint pain and feet swelling.  [R195].  Plaintiff's ambulation was without any problems.  [R196].

Dr. Kuponiyi found that Plaintiff had uncontrolled hypertension.  He also found that Plaintiff had anemia that needed a physician's care and a problem with joint pain that might be related to an immune complex disease.  Dr. Kuponiyi thought that Plaintiff might need a rheumatologist, infectious disease physician, or an immunologist to evaluate her hives.  He next found that Plaintiff needed treatment if she had H pylori gastritis (inflammation of the stomach due to bacteria).[6]  Finally, he found that Plaintiff's right eye problem would need to be re-evaluated by an opthamologist.  [R196].

On September 23, 2003, Plaintiff went to the SJFMC for a cardio referral.  She was assessed with hypertension and allergic reaction.  She was given a cardio referral and told to continue with her current medications.  [R310].  Plaintiff was seen on

_____

[6]      Maria Triantafyllopoulou, Helicobacter Pylori Infection, eMedicine (Mar. 26, 2008), http://www.emedicine.com/ped/topic938.htm (last visited May 9, 2008).

12

September 25, 2003, for chest discomfort, palpitations, and shortness of breath by Dr. Ilyas Rajput. [R317]. The doctor diagnosed Plaintiff with chest pain, exertional dyspnea, hypertension, and palpitations. [R318].

Plaintiff had an echocardiogram on September 29, 2003, which revealed that Plaintiff had normal left atrial, left ventricular, and aoritic root dimensions. She also had normal left ventricular systolic function, normal valves, and no segmental wall motion abnormalities. As a result, it was concluded that Plaintiff had normal left ventricular dimensions and systolic function. However, trace tricuspid valves regurgitation was noted. [R277].

Plaintiff had an exercise tolerance test on October 6, 2003, which indicated that Plaintiff had dizziness and stopped because of fatigue. The results indicated that Plaintiff had "[n]on-specific ST-T abnormalities noted."[7] Plaintiff had, however, a normal stress echo study. [R275, 279]. Plaintiff had another exercise tolerance test on

---

[7]   Minor electrocardiographic ST-T abnormalities are common. One study has determined that persistent, minor, nonspecific ST-T abnormalities are associated with increased long-term risk of mortality due to myocardial infarction, coronary heart disease, and cardiovascular disease. Martha Daviglus et al., Association of Nonspecific Minor ST-T Abnormalities With Cardiovascular Mortality, JAMA, Vol. 281, No. 6 (Feb. 10, 1999), http://jama.ama-assn.org/cgi/content/full/281/6/530 (last visited May 8, 2008).

13

October 9, which indicated that Plaintiff had a normal stress echo study.  Non-specific ST-T abnormalities were noted.  [R268].

Plaintiff went to the Southern Jersey Family Medical Center on October 22, 2003, where she was diagnosed with stable hypertension and what appears to be chronic urticaria.  [R305].

Plaintiff visited the SJFMC on November 21, 2003.  She was assessed with hypertension and chronic urticaria.  [R311].  On January 21, 2004, Plaintiff went to the SJFMC for medication refills.  She did not make any complaints.  Plaintiff was assessed with chronic urticaria, hypertension, and anemia.  [R312].

Plaintiff went to the Southern Jersey Family Medical Center for treatment on February 20, 2004.  She reported no complaints on that day and was told to continue with her current medications.  [R313].

Dr. Lawrence Schwartz, D.O., wrote a letter to the SJFMC.  In this letter, Dr. Schwartz described Plaintiff's problem with hives as follows: (1) they occur randomly over upper and lower extremities and her trunk; (2) the individual lesions last for less than 24 hours; (3) Plaintiff has lip, hand, foot, and eyelid swelling associated with the hives; and (4) the hives were non-painful and itchy.  [R342].  Dr. Schwartz believed that Plaintiff had chronic urticaria, which meant that she had hives lasting

14

longer than six weeks.  He explained that it was difficult to diagnose the specific cause.

Dr. Schwartz noted that the etiology of the hives were idiopathic (difficult to discern).

Dr. Schwartz prescribed Plaintiff with a new medication regimen.  [R343].

On May 7, 2004, Plaintiff had an appointment at the SJFMC.  Her blood pressure

was 120/80.  The medical notes are otherwise illegible.  [R314].  Plaintiff was seen

again on May 21, 2004, where she was diagnosed with an allergic reaction and stable

hypertension.  [R306].

Plaintiff was seen by Dr. Lalita Swaminathan on November 2, 2005, for high

blood pressure.  [R217].  Dr. Swaminathan assessed Plaintiff with uncontrolled

hypertension and prescribed blood pressure medication.  [R218].

Plaintiff was seen by Dr. Cheryl Buck-Patterson at the Emory Clinic on

December 6, 2005, for a follow up.  A physical examination noted that Plaintiff had

good air movement in her lungs.   Dr. Buck-Patterson found that Plaintiff had

hypertension that was not optimally controlled and chronic urticaria.  [R213].

On June 7, 2006, Plaintiff was seen at the Emory Clinic where she complained

of hypertension and other problems.  The doctor made the following observations:

(1) Plaintiff had a left arm bruise, which Plaintiff stated was caused by anemia; (2) an

allergist needed to diagnose Plaintiff; (3) Plaintiff had joint pain on June 7; and

AO 72A
(Rev.8/8
2)

(4) Plaintiff had nausea since 2003.  The doctor provided the following assessment: (1) poorly controlled hypertension; (2) anemia; (3) depression; and (4) nausea.  [R212].

On June 14, 2006, a medical note from the Emory Clinic indicated that Plaintiff had mild anemia, and an abnormal kidney chemistry.  Plaintiff was to schedule a lab appointment.  [R341].

C.     *June 14, 2006, Evidentiary Hearing*

Plaintiff was 36 years old at the time of her administrative hearing.  She completed the eleventh grade but never obtained a GED.  [R332].

Plaintiff last worked in 2003 as a front desk agent, which entailed checking guests in and out and checking rooms to make sure they were empty or clean.  [R333]. Plaintiff explained that she could no longer work mostly because of outbreaks of hives and joint pain.  [R334].  Plaintiff also stated that she was always tired.  [R334].

During the day, Plaintiff performed a little housework like washing some dishes. [R334].  She watched television.  She did not leave the house to visit family or go shopping.  Plaintiff was able to dress herself.  Plaintiff had trouble staying asleep because of muscle pain.  She could lift up to 15 pounds, but she could not lift her daughter who was 24 pounds.  [R335].  Plaintiff could walk about a quarter of a mile. [R336].

16

Plaintiff had a lot of muscle pain in her arms, and she had joint pain in her fingers.  She could not pick up quarters on a table because of her joints.  Plaintiff sometimes had blurred vision.  [R336].  Plaintiff experienced dizziness upon standing after sitting for awhile.  [R336-37].  Hot weather bothered her hives while cold weather bothered her joints.  [R339].

The ALJ concluded the hearing by stating that he was going to continue the hearing because Plaintiff had several things in her file, all of which speculate about what is wrong with her without definitive diagnoses.  He noted that he would try to contact the Allergy and Asthma Clinic to obtain records.  [R339].

## III.    ALJ'S FINDINGS OF FACT

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2006.

2.    The claimant has not engaged in substantial gainful activity since February 15, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: chronic urticaria and hypertension (20 CFR §§ 404.1520(c) and 416.920(c)).

. . .

17

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

. . .

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform heavy work.

. . .

6.      The claimant is capable of performing past relevant work as a front desk agent or cashier. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

. . .

7.      The claimant has not been under a "disability" as defined in the Social Security Act from February 15, 2003 through the date of the decision (20 CFR 404.1520(f) and 416.920(f)).

[R13-17].

        The ALJ explained these findings as follows. The ALJ first determined that the

medical record demonstrated that Plaintiff's only severe impairments were urticaria

(hives) and hypertension. The ALJ found that Plaintiff's complaints of joint pain and

18

swelling were not severe because they were not supported by the medical record.  Also, the ALJ determined that the medical record for headaches and anemia did not demonstrate more than minimal functional limitations.  Finally, the ALJ determined that there was no evidence that Plaintiff had coronary impairments.  [R13-15].

The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the listed impairments because: (1) Plaintiff was responsive to her treatment regimen for her chronic urticaria and hypertension; and (2) these two impairments did not result in any physical or neurological deficits.  [R15-16].  The ALJ further found that Plaintiff could perform heavy work.  The ALJ noted that Plaintiff's complaints of pain were not supported by the evidence.  The ALJ also noted that Plaintiff was capable of working in the past despite the chronic and severe nature of her long-standing impairments.  [R16].

The ALJ finally found that Plaintiff could perform her past relevant work as front desk agent, which entailed up to 8 hours per day of typing, handling small objects, and lifting no more that 25 pounds.  The ALJ found that Plaintiff's residual functional capacity did not preclude her from working this desk clerk job as it was actually performed.  [R17].

## IV.    STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner.  The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a).   The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Doughty v. Apfel*, 245 F.3d 1274,

20

1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must prove at step one that she is not undertaking substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments, which significantly limits her ability to perform basic work-related activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At step four, if the claimant is unable to prove the existence of a listed impairment, she must prove that the impairment prevents performance of past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education and past work experience to determine whether the claimant can perform other work besides past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform. To be considered disabled, the claimant must

AO 72A
(Rev.8/8
2)

prove an inability to perform the jobs that the Commissioner lists. *Doughty*, 245 F.3d at 1278 n.2.

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Despite the shifting of burdens at step five, the overall burden rests on the claimant to prove that she is unable to engage in any substantial gainful activity that exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).

## V.     SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner. Judicial review of the administrative decision addresses three questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues. *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive. *Lewis v. Callahan*, 125 F.3d

22

1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). "Substantial evidence" means more than a scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991).   In contrast, review of the ALJ's application of legal principles is plenary. *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

23

## VI.   CLAIMS OF ERROR

Plaintiff's two-page *pro se* brief does not identify any specific errors committed by the Commissioner.  Her brief suggests that the ALJ erred in finding her not disabled because her ailments, which have lasted for more than one year, have prevented her from working.  Plaintiff lists the following as impairments that she suffers from: severe anemia; chronic urticaria, chronic fatigue syndrome; valvular heart disease; fibromyalgia myositis; and depression/bipolar disorder.  She also complains that these impairments cause the following symptoms: incapacitating exhaustion; weakness; chronic muscle pain; joint pain; headaches; sleep problems; dizziness; disorientation; memory impairment; and problems concentrating.  [Doc. 12 at 1-2].

The Commissioner responds that the ALJ properly evaluated Plaintiff's subjective complaints pursuant to the regulations and Eleventh Circuit case law. [Doc. 15 at 4-5].  First, the Commissioner contends that the ALJ properly found that Plaintiff's complaints of pain were not credible given that she had previously been able to work with hypertension and urticaria.  [*Id.* at 5].  The Commissioner then lists evidence from the record to argue that: (1) the medical findings did not suggest that Plaintiff had disabling impairments, [*id.* at 5-8]; and (2) Plaintiff's testimony and past work indicated that the ALJ's RFC determination of heavy work was appropriate,

24

[*id.* at 8-9].  As a result, the Commissioner argues that substantial evidence supports the ALJ's credibility and RFC findings.  [*Id.* at 9].

Before addressing the merits of Plaintiff's appeal, the undersigned makes a few preliminary observations.  First, Plaintiff has failed to adhere to this Court's Order that scheduled briefing.  In this Order, the Court advised Plaintiff that she must comply with the Court's orders and rules.  [Doc. 9 at 2].  The Order then stated that Plaintiff's brief "*must* contain the following information under the appropriate headings:" (1) a statement of issues; (2) a statement of the case; (3) an argument; and (4) a conclusion.  [*Id.* at 5 (emphasis added)].  Plaintiff's brief does not contain any of this information.  [*See* Doc. 12].  Although the Court recognizes that Plaintiff is proceeding *pro se*, this does not absolve her from following this Court's orders or procedural rules.  *See Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002) (noting that *pro se* litigants are required to follow procedural rules); *see also Reed v. Fulton County Government*, 170 Fed. Appx. 674, 676 (11th Cir. 2006) (noting that "pro se litigants are obligated to obey discovery orders) (citing *Morton v. Harris*, 628 F.2d 438, 440 (5th Cir. Unit B 1980)); *Wilson v. Astrue*, 249 Fed. Appx. 1, 5 (10th Cir. 2007).  The undersigned probably could affirm the Commissioner's decision on this basis. However, "the Eleventh Circuit has a vigorous policy of resolving issues on the merits and not on

25

procedural technicalities." *U.S. ex rel. Butler v. Magellan Health Servs., Inc.*, 74 F. Supp. 2d 1201, 1214 (M.D. Fla. 1999). As a result, the undersigned will examine Plaintiff's case on the merits. Plaintiff is advised that in the future, she must comply with procedural rules and orders.

Second, the Court clarifies that "although [it] make[s] some allowances for the pro se plaintiff's failure to cite proper legal authority, [her] confusion of various legal theories, [her] poor syntax and sentence construction, or [her] unfamiliarity with pleading requirements, the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Wilson*, 249 Fed. Appx. at 5 (quoting *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)). Thus, the Court will not serve as Plaintiff's attorney.

Although this Court may not serve as Plaintiff's attorney, the Court still has a role in social security appeals, namely "to review the ALJ's findings of fact to determine if they are supported by substantial evidence and to determine whether the ALJ applied the correct relevant law." *Preston v. Barnhart*, 187 Fed. Appx. 940, 940 n.1 (11th Cir. 2006). Here, Plaintiff, who is proceeding *pro se*, does not clearly assign errors to the Commissioner's final decision, but she indicates that his decision was wrong because she has a number of impairments and a number of disabling symptoms.

26

[*See* Doc. 12].  The Commissioner interprets Plaintiff's brief as arguing that the ALJ's disability determination was not supported by substantial evidence.  [*See* Doc. 15].  The Court finds that the Commissioner's statement of the issue is a fair construction of Plaintiff's brief.   As such, the issue before the Court is whether the disability determination was supported by substantial evidence.  The Court finds, however, that, for the reason below, it cannot determine whether the ALJ's decision was supported by substantial evidence because the ALJ failed to fully and fairly develop the evidence.

A claimant has the burden of proving that she is disabled by identifying medical and other evidence that shows she is disabled.  20 C.F.R. §§ 404.1512(a), 416.912(a).  However, before an ALJ makes a disability determination, the ALJ has the duty to develop fully and fairly the claimant's medical history.  *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995); *see also* 20 C.F.R. §§ 404.1512(d), 416.912(d).  When the plaintiff appears *pro se* before the ALJ and the claimant has not waived her right to representation, the ALJ's duty to develop the record "rises to a special duty when an unrepresented claimant unfamiliar with hearing procedures appears before him."  *Cowart v. Schweiker*, 662 F.2d 731, 734-35 (11th Cir. 1981) (quoting *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. July

27

17, 1981)).   Under this special duty, the ALJ must: (1) "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," *id.* (quoting *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978); and (2) "be 'especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited,' " *id.* (quoting *Cox v. Califano*, 587 F.2d at 991).  To warrant remand for the ALJ's failure to develop the record, there must be a showing of prejudice.  *Brown*, 44 F.3d at 935 (citing *Kelley v. Heckler*, 761 F.2d 1538, 1540 n.2 (11th Cir. 1985)).

The undersigned first finds that the ALJ did not develop the record as required by the regulations.[8]  At the conclusion of Plaintiff's evidentiary hearing, the ALJ

---

[8]     It is unclear whether Plaintiff waived her right to an attorney.  At the hearing, the ALJ elicited the following testimony:

ALJ:  . . . .  In the Notice of Hearing I sent to you there was indication that you could be represented at this hearing by a lawyer or other representative. Since you're here without one, am I correct in assum[ing] that you wish to proceed without a lawyer?

Plaintiff:     Yes.

[R327].  Plaintiff's "wish" to proceed without counsel may or may not indicate a desire to waive counsel.  *Cf. Cowart*, 662 F.2d at 734-35 (holding that plaintiff's statement that she wished to proceed without counsel and husband's statement that she tried to obtain counsel did not provide evidence of waiver).  The Court need not decide this issue because the ALJ failed to satisfy his duty under either the normal or heightened standard.

28

suggested that he could not determine whether Plaintiff was disabled because he did not

have important medical records.  Specifically, the hearing transcript states:

> Q    All right.  The problem is that I don't, there are several things in
>      your file.  So, you were actually followed by this Atlanta Allergy
>      and Asthma Clinic.  You actually went to see these people?
>
> A    Yes.
>
> Q    What I'm going to have to do is continue the hearing and try to get
>      the information from the Allergy and Asthma Clinic because the
>      way your file currently looks is I've got all these speculations about
>      what may be wrong with you, but nobody really knows.
>
> A    No, yeah.  No.
>
> Q    Yeah, so I need to, actually, what I'm going to do is see if we can
>      contact, if you say you've been to these people, let's see if we can
>      contact the Allergy and Asthma Clinic and try to get these records
>      back.  Because that would be very helpful for me to have the
>      information about this.
>
> A    Okay.
>
> ALJ:  If there's nothing further, I'll go ahead and close the hearing for
>       today.  We will continue it.

[R339].  The evidentiary hearing was never rescheduled.  [*See* R11 (noting that an

evidentiary hearing was only held on June 14, 2006)].  As a result, the ALJ did not have

the opportunity to question Plaintiff about the records he was supposed to receive from

the Allergy and Asthma Clinic.

29

Not only did the ALJ not question Plaintiff about these medical records, the Social Security administrative record indicates that the ALJ never obtained the medical records from the Allergy and Asthma Clinic. The only medical record from the Atlanta Allergy and Asthma Clinic is dated January 4, 2006, and indicates that Dr. Michael Halwig had the opportunity to see Plaintiff and would provide a full report after completing her evaluation. [R201]. There is no report from Dr. Halwig or any other medical notes from the Allergy and Asthma Clinic. Thus, contrary to the ALJ's statement of intention at the hearing, he did not obtain medical records from the Allergy and Asthma Clinic. As a result, the undersigned finds that the ALJ did not fully and fairly develop the record because he never obtained allergy clinic records and he never continued Plaintiff's hearing to question her about these records.

The undersigned next finds that this failure to develop the record was prejudicial to Plaintiff. The regulations authorize an ALJ to continue a hearing when "he or she believes that there is material evidence missing at the hearing." 20 C.F.R. §§ 404.944, 416.1444. Thus, the ALJ in continuing Plaintiff's hearing recognized that he was missing information that was material to Plaintiff's disability claim. There is no evidence that the ALJ ever procured this information despite recognizing its materiality. Also, the ALJ's statements at the hearing indicate that he did not believe that he could

make a disability determination without this information.  [*See* R339 ("What I'm going to have to do is continue the hearing and try to get the information from the Allergy and Asthma Clinic because the way your file currently looks is I've got all these speculations about what may be wrong with you, but nobody really knows.")].   That the ALJ recognized that he did not have material information yet made a disability decision without this information indicates that Plaintiff was prejudiced by the ALJ's decision.[9]  *See Brown*, 44 F.3d at 936 (holding that the lack of medical documentation was prejudicial because it created an evidentiary gap in that there was no way of knowing whether the missing evidence would lend credence to plaintiff's allegations

---

[9]      The ALJ never explained in his disability decision why he chose not to complete the continued hearing and why he made the disability decision without the records from the Allergy and Asthma Clinic.  [*See* R11-17].

AO 72A
(Rev.8/8
2)

but assuming it would in the absence of contrary evidence).[10]  As a result, the Court finds that Plaintiff was prejudiced by the ALJ's failure to develop the record fully.

Based on the above discussion, the Court concludes that it cannot determine whether substantial evidence supports the ALJ's disability determination because the ALJ failed to develop the record fully and fairly by obtaining evidence that was material to Plaintiff's disability claim.  Since the Court concludes that Plaintiff's case must be remanded for further proceedings, the Court discusses one clear error in the ALJ's decision that must be corrected on remand.  *See Jones v. Astrue*, No. 06-4129-JAR, 2007 WL 2909265 at * 9 (D. Kan. Oct. 1, 2007) (remanding where ALJ's evaluation of medical opinions was plain error even where plaintiff's brief did not raise the issue).

---

[10]     *But see Brooks v. Barnhart*, 66 Fed. Appx. 728, 729 (9th Cir. 2003) (holding that the ALJ's suggestion that a supplemental hearing would be prudent but failure to actually hold the supplemental hearing was not error because substantial evidence in the record supported the ALJ's determination).  The undersigned finds *Brooks* to be distinguishable.  First, in *Brooks*, it appears that the ALJ only suggested that he wanted to hold a supplemental hearing while the ALJ in this case definitively stated that he was continuing the case.  [R339].  Second, the ALJ in this case failed to fully develop the record by obtaining what appeared to be material evidence while the absence of the evidence in *Brooks* was not shown to be prejudicial.  As a result, the Court will not follow *Brooks*.

AO 72A
(Rev.8/8
2)

The ALJ erred in articulating the RFC determination.  The ALJ merely determined that Plaintiff could perform heavy work.  [*See* R16].  The Commissioner requires, however, that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . .  Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  SSR 96-8p.  The ALJ never performed the function-by-function analysis before determining that Plaintiff could perform a heavy work.  This was error.  *See e.g.*, *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 208 (W.D.N.Y. 2005) ("Since the ALJ failed to make a function-by-function analysis of plaintiff's RFC, his determination that she had the RFC for sedentary work is not supported by substantial evidence."); *Jones v. Barnhart*, 372 F. Supp. 2d 989, 1005 (S.D. Tex. 2005); *Blom v. Barnhart*, 363 F. Supp. 2d 1041, 1058 (E.D. Wis. 2005); *Jesse v. Barnhart*, 323 F. Supp. 2d 1100, 1110 n.49 (D. Kan. 2004) (citing *Alexander v. Barnhart*, 74 Fed. Appx. 23, 28 (10th Cir. 2003), for the proposition that "the ALJ's RFC determination [is] not supported by substantial evidence where the ALJ failed to make a proper function-by-function analysis").

AO 72A
(Rev.8/8
2)

Accordingly, the undersigned **REVERSES** the Commissioner's disability determination and **REMANDS** Plaintiff's case for further proceedings consistent with this decision.

## VII.   CONCLUSION

For the aforementioned reasons, the undersigned **REVERSES** the Commissioner's disability determination and **REMANDS** Plaintiff's case to the Commissioner for further proceedings consistent with this opinion.

The Clerk shall enter judgment for Plaintiff.

**IT IS SO ORDERED,** this the 15th day of May, 2008.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

34

AO 72A
(Rev.8/8
2)